576 So.2d 602 (1991)
Alvin HARRIS, Sr.
v.
Charles BALLANSHAW, et al.
Alvin HARRIS, Sr.
v.
REGIONAL TRANSIT AUTHORITY.
Nos. 90-CA-1064, 90-CA-1065.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1991.
Lyndia Green-Faust and Nadine M. Ramsay, New Orleans, for appellant.
Carol L. Haynes, New Orleans, for Appellee, Transit Management of Southeast Louisiana, Inc.
*603 Before GARRISON, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
In this consolidated worker's compensation and personal injury case, plaintiff's appeal claims the trial court erred in authorizing his employer reimbursement for benefits previously paid to him from the full amount he received in settlement from the third party tortfeasors. Plaintiff asserts the employer's reimbursement should have been limited to the amount received from the tortfeasors for loss of wages. Plaintiff also asserts he should have been awarded reasonable costs of recovery, including attorney's fees. In its answer to the appeal, the employer asserts the trial court erred by not awarding it legal interest. As both the employee's assigned errors and the employer's assigned error are correct, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY
On November 9, 1986, Alvin Harris, Sr., was employed as a bus driver for Transit Management of Southeast Louisiana, Inc. (TMSEL). Harris was injured when the bus he was driving was struck by a vehicle owned by Lionel Carmouche, driven by Charles Ballanshaw and insured by First Horizon Insurance Company. As a result of the accident, Harris sustained injuries to his right wrist, right knee, left shoulder, neck and left hip joint.
Harris filed a personal injury suit against the third party tortfeasors and their insurer on October 9, 1987. (Civil District Court No. 87-18596). On December 1, 1987, Harris' original petition, which claimed $70,000 in damages, was amended to claim $300,000 in damages because Harris had been "informed that the injury to his right hand and wrist are permanently disabling."[1]
Harris filed a worker's compensation suit against TMSEL for compensation benefits. (Civil District Court No. 88-18063). Subsequently, on November 9, 1988, TMSEL intervened in Harris' personal injury suit claiming it had incurred damages of $17,024.43 as a result of third party tortfeasors' actions. The two suits were consolidated.
At the commencement of the December 11, 1989 trial of the consolidated cases, First Horizon tendered its policy limits of $25,000 into the registry of the court. In return, the third party tortfeasors were released.
Despite the settlement of the personal injury claim, the worker's compensation claim went to trial. Judgment was rendered on January 24, 1990, in favor of plaintiff for supplemental earnings benefits of $172.80 a week, retroactive to March 21, 1988 with interest, subject to a credit for worker's compensation benefits of $864.08 paid during the period of October 4, 1989 through December 2, 1989. The trial court also authorized TMSEL to withdraw the sum of $19,621.65 from the $25,000 in the registry of the court, in partial payment of the benefits TMSEL paid to Harris.[2] The court's reasons for judgment directed that TMSEL could obtain a court order to make future withdrawals from the remainder of the $25,000 on deposit, following TMSEL's future worker's compensation benefit payments to Harris.[3]

*604 ASSIGNED ERRORS
Harris' first claim is, under LSA-R.S. 23:1103 and Brooks v. Chicola, 514 So.2d 7 (La.1987), the trial court erred by failing to limit the intervening employer's reimbursement to the amount he recovered from the third party tortfeasors for lost wages. In response, TMSEL contends that Brooks was legislatively overruled by Act of 1989, No. 454. Alternatively, TMSEL contends Brooks is inapplicable since the trial court made no award for pain and suffering.
In Brooks, an employee sued third parties for injuries arising out of a work-related accident. The worker's compensation insurer intervened seeking reimbursement for past weekly compensation benefits paid and future compensation benefits to be paid to the worker. At trial, the third party tortfeasor was found 90% at fault and the employer 10% at fault. The jury awarded the injured worker $124,500 in damages as follows:

Past physical pain and suffering .... $ 7,000.
Future physical pain and
 suffering.......................... 30,000.
Past mental anguish.................. 5,000.
Future mental anguish................ 2,500.
Past loss of earnings................ 15,000.
Future loss of earnings.............. 65,000.

The trial judge in Brooks further limited the compensation carrier's credit for future compensation to the $65,000 awarded for future loss of earnings. On appeal, 3 members of a 5 judge panel held the credit for future weekly compensation benefits was subject to the entire balance of the jury's award, which had the net effect of reducing the worker's award for pain and suffering. The Supreme Court reversed the court of appeal and reinstated the trial court's judgment because it concluded a worker's weekly compensation benefits are paid only in lieu of his lost wages and lost earning capacity, during periods of disability resulting from job related accidents, not in lieu of his pain and suffering. Courts applying Brooks, have likewise limited the intervening employer's recovery to the amounts awarded for loss of income and medical expenses. Robertson v. Employer's Cas. Co., 546 So.2d 263 (La.App. 1st Cir.1989); Thompson v. PetroUnited Terminals, Inc., 536 So.2d 504 (La.App. 1st Cir.1988), writ den., 537 So.2d 212, 213 (La.1989); Whitehead v. Fireman's Fund Ins. Co., 529 So.2d 82 (La.App. 3d Cir. 1988).
By Acts of 1989, No. 454, Sect. 4, the Louisiana legislature overruled Brooks. That legislation amended LSA-R.S. 23:1103 by designating its existing paragraphs as paragraphs A(1) and A(2), respectively; adding the second sentence of paragraph A(1); and adding subsections B and C. Brooks was overruled by Subsection B which provides as follows:
B. The claim of the employer shall be satisfied in the manner described [in subsection A(1) ] from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages.
Section 13 of the Act directs that it shall become effective on January 1, 1990. The third party tortfeasors settled, obtained their release and deposited the $25,000 into the registry of the court, however, on December 11, 1989. The trial of Harris' worker's compensation claim against TMSEL was also held on December 11, 1989. Thus, under the direction of its enabling act, LSA-R.S. 23:1103(B) does not apply to the funds Harris received in 1989 from the third party tortfeasors in return for their release.
Further, as Harris settled with the third party tortfeasors, the trial court's judgment did not address Harris' entitlement to the damages he requested from the tortfeasors for physical pain and suffering, mental pain and suffering and lost wages. Nor did the judgment apportion the deposited $25,000 between Harris' claimed damages. Therefore, the trial court's judgment is reversed insofar as it directs the intervening employer to withdraw $19,621.65 from the registry of the *605 court. On remand, the trial court is directed to determine Harris' damages for his pain and suffering, loss of wages, and medical expenses. The trial court should then limit the intervening employer's recovery to the damages Harris would have recovered from the third party tortfeasors for loss of wages and medical expenses.
Harris' second claim is the trial court erred in failing to award him reasonable costs of recovery, including attorney's fees. Based upon Moody v. Arabie, 498 So.2d 1081 (La.1986), we agree.
Moody directs that when a third party suit is brought or recovery effected by an injured worker, and his employer or its carrier intervenes for recoupment of worker's compensation paid to the worker, the employer or carrier may be charged with a proportionate share of the reasonable and necessary costs of recovery, including attorney's fees incurred by the injured worker in the suit against the third person. In determing the costs of recovery, the trial court must consider necessary and reasonable expenditures and obligations, including the attorney's fees incurred in effecting the recovery. Id., 498 So.2d at 1086.
Once reasonable attorney's fees and necessary costs of recovery are determined, they "are to be apportioned between the worker and the employer according to their interersts in the recovery."[4]Id. To make the apportionment, Moody provides the following calculation:
Employer's reimbursement = Employer's share
Recovery from third person of recovery
Accordingly, on remand the trial court is directed to calculate the amount the intervening employer should bear as its proportionate share of the costs of recovering the $25,000 from the third party tortfeasors.
TMSEL's answer to Harris' appeal claims the trial court erred in failing to award it legal interest. We agree.
Generally, an intervening worker's compensation carrier seeking reimbursement from the third party tortfeasor is entitled to legal interest from the date of judicial demand and to legal interest on the amount of each payment made after juducial demand commencing from the date each payment was made until the judgment is paid. Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writ den., 508 So.2d 74 (La.1989). Thus, as TMSEL intervened in Harris' personal injury suit and made judicial demand on the third party tortfeasors on November 9, 1988, it is entitled to legal interest from that date.
Accordingly, the judgment of the trial court is reversed insofar as directs TMSEL to withdraw $19,621.65 from the registry of the court. On remand, the trial court is directed to determine the amount of damages Harris would have received from the third party tortfeasors for his pain and suffering, loss of wages and medical expenses. The trial court is then directed to limit the intervening employer's recovery to the amounts awarded to Harris for loss of wages and medical expenses. On remand, the trial court is further directed to calculate TMSEL's proportionate share of the cost of recovering the $25,000 from the third party tortfeasors and to award the parties legal interest from their respective dates of judicial demand.
REVERSED AND REMANDED.
NOTES
[1] The amended petition itemized Harris' damages as follows:

Past and present physical pain and
 suffering.......................... $55,000.
Future physical pain and suffering.. 170,000.
Lost wages.......................... 5,000.
Mental pain and suffering........... 70,000.

[2] TMSEL's authorized withdrawal of $19,621.65 is based upon paid medical benefits of $11,106.93; paid worker's compensation benefits of $5,244.60 through March 21, 1988; excess pay of $2,406.04 through March 21, 1988; and paid worker's compensation benefits of $864.08 from October 4, 1989 through December 2, 1989.
[3] The court's reasons for judgment also stated, "The Court does not claim to be an expert in the area but Mr. Harris impresses the Court as depressed or suffering from some form of post traumatic stress disorder symptomology. I find that Mr. Harris has a fear to use his hand. This conclusion is reinforced by the testimony of Joleen Griener, an occupational therapist who specializes in rehabilitation of the hand, who tested Mr. Harris."
[4] In determining and fixing the amount of attorney's fees, the trial court must disregard any provisions of an attorney-client contract that would produce an excessive fee and must determine the fee consistent with the factors set forth in the Code of Professional Responsibility DR 2-106(A).